# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KEVIN CLAUSEN,

    Plaintiff

v.

C/O R. SMITH, et. al.,

    Defendants

Case No.: 3:17-cv-000416-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 40

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 40, 40-1 to 40-9, 42-1 to 42-6.) Plaintiff filed a response on January 23, 2020 (ECF No. 52), and a second response on January 27, 2020 (ECF No. 53), which Defendants did not move to strike, and so the court has considered these documents together as Plaintiff's response. Defendants filed a reply (ECF No. 54.) Plaintiff also filed a sur-reply. (ECF No. 55.) Defendants moved to strike Plaintiff's sur-reply. (ECF No. 57.) The court issued a separate order granting the motion to strike.

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (First Amended Complaint

1  (FAC), ECF No. 13.) The events giving rise to this action took place while Plaintiff was housed

2  at Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are Javier Castro, Dillyn

3  Keith, Robert Smith, Brian Ward, and Harold Wickham.

4       The court screened Plaintiff's FAC, and determined Plaintiff could proceed with a

5  Fourteenth Amendment due process claim against Defendants related to Plaintiff being validated

6  as a security threat group (STG) member, where he was determined to be a white supremacist

7  affiliate, without giving him a due process hearing. He was also allowed to proceed with an equal

8  protection claim against Wickham based on allegations that Wickham treated Plaintiff differently

9  than other similarly situated inmates in denying his grievance requesting a STG due process

10  hearing. (*See* ECF No. 16.)

11       Plaintiff alleges that on June 8, 2015[1], Smith placed a falsified DOC 1598 form into

12  Plaintiff's I-File, designating Plaintiff as an STG member without ever seeing or talking to

13  Plaintiff. He avers that Castro was the lead gang investigator at NNCC, who is supposed to

14  review every STG validation and the DOC 1598 form. Plaintiff alleges that Castro allowed this

15  falsified document to be placed in Plaintiff's I-File without ever giving Plaintiff any due process

16  protections. He claims that Keith (who was Plaintiff's caseworker), refused his numerous verbal

17  and written requests to see an STG validation committee. He asserts that Ward (the associate

18  warden) refused or ignored his requests to see the STG committee. Finally, he avers that

19  Wickham (the assistant director of NDOC) had authority to order a due process STG hearing,

20  and Plaintiff informed him through his grievances that he never saw Smith on June 8, 2015, and

21  asked to see the STG committee, but Wickham denied his requests.

22

23  ---

[1] At one point in the FAC, Plaintiff references June 8, 2016, and at other times he references June 8, 2015. The documentation submitted by the parties reflects that the correct date is June 8, 2015.

He also alleges that Wickham denied his equal protection rights because another inmate, Garner, was given a full STG committee review 31 months after the 10-day timeframe to appeal the STG designation had run, while Wickham denied his request for a hearing on the basis that he was outside the 10-day timeframe.

Plaintiff avers that the STG determination was made on the basis that Plaintiff had a swastika tattoo and a white pride tattoo, but Plaintiff has maintained all along that he never had these tattoos, and denies that he is a white supremacist. Therefore, he claims that there was no evidence to support his designation as a white supremacist.

Defendants move for summary judgment, arguing: (1) they are entitled to qualified immunity because they cannot be sued for monetary damages or injunctive relief in their official capacities, and because defendants Ward and Wickham did not personally participate in the alleged constitutional violations; (2) the action was filed after the statute of limitations had run; (3) Plaintiff failed to exhaust his administrative remedies before filing his complaint; and (4) Wickham did not violate Plaintiff's right to equal protection.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

other hand, where reasonable minds could differ on the material facts at issue, summary

judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no

dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex*, 477 U.S. at 323-24 (purpose

of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

one party must prevail as a matter of law"). In considering a motion for summary judgment, all

reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

*Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

*& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

*Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must

come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Exhaustion**

**1. Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

"Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery related to the  merits of the suit." *Id*. at 1170 (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). Therefore, the court is addressing this argument first.

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff  "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process)). The ultimate burden of proof, however, remains with the defendant. *Id*.

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the

agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available administrative remedies "under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658.

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth*, 532 U.S. at 738).

Administrative Regulation (AR) 740 governs the grievance process, and exhaustion of administrative remedies, within NDOC. Defendants did not submit AR 740 as an exhibit to their motion, and instead state that the court may take judicial notice of AR 740, as it is a matter of public record. The problem is that AR 740 is changed from time to time; therefore, Defendants should submit the version of AR 740 that was in effect during the relevant time period. Plaintiff did not object to Defendants' request that the court take judicial notice of AR 740; therefore, the court will take judicial notice of the general provisions of AR 740: under AR 740 an inmate must complete the informal, first and second level grievances to exhaust administrative remedies; an inmate may proceed to the next grievance level, even if a response is overdue; the prison has 45

days to respond to an informal and first level grievance, and 60 days to respond to a second level grievance.[2]

### 2. Summary of Argument

Defendants argue that Plaintiff filed grievance, 2006-30-00906, on May 20, 2015, to challenge his placement in administrative segregation and the white supremacist label, but he did not pursue this grievance beyond the informal level.

On May 18, 2016, Plaintiff filed grievance 2006-30-24856, where he challenged his June 8, 2015, STG designation. Plaintiff pursued this grievance through the second level, but Defendants contend that he filed this lawsuit prior to receiving a second level response to the grievance. Defendants argue that a response to Plaintiff's second level grievance in grievance 20063024856 was not prepared or completed until August 10, 2017, more than a month after the complaint was filed on July 6, 2017, and received by the court on July 10, 2017. Plaintiff signed for his second level grievance response on August 31, 2017. They contend that because Plaintiff filed his complaint *prior* to the completion of the grievance process, the court must dismiss the complaint.

Defendants further argue that the 20063024856 grievance only grieved the June 8, 2015, validation, but did not raise a later request to review his STG classification.

Plaintiff asserts that he fully exhausted his administrative remedies after he was notified by his caseworker that his second level grievance was inactive after a waiting a year for an answer when the prison has 60 days to respond.

---

[2]
http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%2074 0%20-%20Inmate%20Grievance%20Procedure%20-%2011.20.2018.pdf, last visited July 7, 2020.

### 3. Analysis

Plaintiff filed grievance, 20063000906, on May 26, 2015, stating that at intake he was informed he would be in administrative segregation due to having tattoos and being labeled as a white supremacist. He said he had no reports of being in a gang and no STG actions taken against him. He indicated he got some tattoos, but not since 1990, and had no recent disciplinary charges. Julie Rexwinkle responded to the informal level grievance on June 15, 2015, and *upheld* the grievance, stating that he was within the timeframe under AR 446, and advised him to submit a kite to his caseworker asking to schedule at STG due process hearing with an "AWP." (ECF No. 40-5 at 2.) This grievance does not address the actual STG designation, but just the placement in administrative segregation *before* the formal designation. According to Defendants, Plaintiff was not formally notified that he was suspected of being affiliated with STG until June 8, 2015. Plaintiff disputes this, and contends did not receive the notification form until it was attached in response to his informal level grievance (dated August 8, 2016 and signed by Plaintiff on September 16, 2016). In any event, grievance 20063000906, which only complained about his placement in administrative segregation, is inapplicable to Plaintiff's claims here. Moreover, the grievance was upheld, so Plaintiff would not have been required to proceed to the next levels.

Plaintiff submitted another informal level grievance, 20063024856, on May 18, 2016, about the process of STG validation. (ECF No. 40-4 at 6.) Jorja Powers responded to the informal level grievance on August 8, 2016, noting that Plaintiff claimed he never received the 1598 form, but she attached the form, which she said showed that Plaintiff refused to sign it on June 8, 2015. She denied the grievance, advising him that he had 10-days from the June 8, 2015 notification to appeal the validation. (ECF No. 40-4 at 2.)

9

Plaintiff filed his first level grievance on September 16, 2016, stating that his STG validation as a white supremacist was unfounded, and that he had never received a gang write up and had not been under investigation. He asked for the removal of the STG status. He also reiterated that he never received the DOC 1598 form, and did not know about the "10-day rule." (ECF No. 40-4 at 2, 5.)

The first level grievance was assigned to Baca, who responded on November 2, 2016, stating that Plaintiff was correctly responded to at the informal level: that the DOC 1598 form showed he refused to sign the notification when he was seen by Smith, and he did not appeal within 10 working days of being validated. (ECF No. 40-4 at 2, 4.)

While the response to the first level grievance is dated November 2, 2016, Plaintiff signed it as having received it and indicated his disagreement with the response on February 22, 2017. (ECF No. 40-4 at 5.)

Plaintiff filed a second level grievance on January 20, 2017, indicating that the first level grievance response was overdue, and asked that this STG status be remedied. He asked for the white supremacist title to be removed, claiming he was not white supremacist. (ECF No. 40-4 at 3.)

On January 30, 2017, defendant Ward told Plaintiff that he had to attach all necessary documents, including carbon copies of the second level grievance. (ECF No. 40-4 at 3, 8.) Plaintiff apparently resubmitted the second level grievance on February 9, 2017. (ECF No. 40-4 at 3.) On March 9, 2017, Ward responded that Plaintiff must attach all necessary documents. (ECF No. 40-4 at 9.) Plaintiff resubmitted the second level grievance again on April 11, 2017. (ECF No. 40-4 at 3, 10.) The second level response was apparently sent to Deputy Director Byrne on July 31, 2017; however, Wickham responded to the second level grievance on August

10, 2017 (it was received at ESP, and signed by Plaintiff on August 31, 2017). (ECF No. 40-4 at 3, 10.) In response, Wickham stated that Plaintiff was answered correctly at the informal and first levels: under AR 446, he had 10 days to appeal his STG validation through the associate warden's office, and he failed to do so. (ECF No. 40-4 at 3.)

Plaintiff submitted his second level grievance on April 11, 2017. Under AR 740, the time limit for the prison to respond to the second level grievance is 60 calendar days from the date the grievance is received by the grievance coordinator.[3] The second level grievance is signed as received by the grievance coordinator on April 11, 2017. Therefore, the prison had 60 days, or until June 10, 2017, to respond to the second level grievance.

Wickham did not respond until two months beyond that deadline, on August 10, 2017, and Plaintiff did not sign the second level response as received until August 31, 2017.

An inmate cannot be required to wait indefinitely to file his lawsuit beyond the deadline which the prison sets for itself to respond to a second level grievance. When the deadline to respond to Plaintiff expired on June 10, 2017, Plaintiff was free to file his lawsuit. Plaintiff's lawsuit was received and docketed by the court on July 10, 2017; therefore, Plaintiff exhausted his administrative remedies *before* he filed his complaint. *See Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies. In such circumstances, prison officials have 'thwart[ed] inmates from taking advantage of [the] grievance process,' making that process unavailable."); (citing *Brown*, 422 F.3d at 943 n. 18 ("Delay in

_____

[3] http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%2074 0%20-%20Inmate%20Grievance%20Procedure%20-%2011.20.2018.pdf, last visited July 7, 2020.

responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available."); *Robinson v. Superintendent Rockview SCT*, 831 F.3d 148, 153 (3d Cir. 2016) (joining other circuits in holding "a prison's failure to timely respond to an inmate's properly filed grievance renders its remedies 'unavailable' under the PLRA"); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) ("Following the lead of the four other circuits that have considered this issue, we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance."); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[T]he failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("[W]e refuse to interpret the PLRA so narrowly as to permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances.").

Defendants' also argue that the 20063024856 grievance only grieved the June 8, 2015 validation, but did not raise a later request to review his STG classification. A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)). Plaintiff's grievance sufficiently alerted the prison to the issue raised in this action: that he disputed the STG designation at a white supremacist, and that he did not receive a due process hearing to challenge that designation.

In sum, Defendants' motion should be denied insofar as they argue that Plaintiff failed to exhaust his administrative remedies prior to filing his complaint.

**B. Statute of Limitations**

    **1. Summary of Argument**

    Defendants argue that Plaintiff filed grievance 20063000906 on May 26, 2015, which confirmed he was notified of his STG status on May 20, 2015. On June 15, 2015, in response to the informal grievance, he was advised to submit a kite to his caseworker requesting a STG hearing per AR 446. He failed to do so. Defendants argue that allowing for equitable tolling, Plaintiff was required to file his lawsuit on or before June 15, 2017, and he filed his complaint on July 10, 2017.

    Plaintiff argues that he did not file his complaint after the statute of limitations. He filed it as soon as he was notified by NDOC that his grievance was inactive after one year, meaning that NDOC waited over a year before answering the second level grievance when they were supposed to answer it within 60 days under AR 740.

    **2. Standard**

    Section 1983 does not contain its own statute of limitations; therefore, federal courts borrow the statute of limitations for section 1983 claims applicable to personal injury claims in the forum state. *See Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). In Nevada, the statute of limitations for personal injury claims, and therefore section 1983 actions brought here, is two years. Nev. Rev. Stat. 11.190(4)(e); *see also Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989).

    "A statute of limitations begins to run on the date on which the plaintiff's claim 'accrues.'" *Pouncil*, 704 F.3d at 573 (citation omitted). "Federal law determines when a cause of action for a Section 1983 claim accrues and, hence, when the statute of limitations begins to

run." *Id.* (citation omitted). Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.* at 574 (citation omitted).

Federal courts apply the forum state's law regarding tolling, including equitable tolling, when not inconsistent with federal law, to civil rights claims filed under section 1983. *Johnson v. State of Cal.*, 207 F.3d 650, 653 (9th Cir. 2000) (citations omitted). "[T]he applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) (citations omitted).

"The exhaustion requirement justifies tolling the statute of limitations, but it does not justify creating a new accrual rule." *Soto v. Sweetman,* 882 F.3d 865, 871 (9th Cir. 2018). An inmate is entitled to equitable tolling while "actively exhausting his remedies[.]" *Id.* at 875.

**3. Analysis**

Defendants rely on the grievance 20063000906, that Plaintiff submitted May 26, 2015, and the response he got from Rexwinkle on June 15, 2015, to argue that Plaintiff filed his complaint beyond the statute of limitations. That grievance, however, involves Plaintiff's assertion that he was told on intake around May 20, 2015, that he would be administratively segregated because he had tattoos and that he was labeled as a white supremacist. In response, Rexwinkle told him on June 15, 2015, that he should submit a kite to his caseworker asking to schedule a STG due process hearing with an AWP. (ECF No. 40-5 at 2.) Defendants do not provide the actual grievance documentation or otherwise show when, or if, Plaintiff actually received this response from Rexwinkle.

Importantly, this grievance did not raise the issue of the formal STG designation, which gave rise to the due process protections, as the NDOC form formally notifying Plaintiff that he was suspected of being affiliated with a STG is dated June 8, 2015, which is *after* he filed

14

grievance 20063000906. Defendants acknowledge that in looking to the accrual date of a claim, courts look at the operative decision. (ECF No. 40 at 12:24-28.)  Here, the operative decision is not the initial placement in administrative segregation, but the official STG designation notification. Defendants' evidence implicitly acknowledges this, as their denial of Plaintiff's subsequent grievance was based on the assertion that he did not file an appeal within 10 working days of the official notification.

Defendants assert that Smith signed the STG notification form on June 8, 2015, indicating that Plaintiff refused to sign it, but Plaintiff maintains that he never saw Smith on June 8, 2015, and did not get that form until he received a response to his informal level grievance  for grievance 200630024856. The response to the informal level grievance is dated August 8, 2016 (ECF No. 40-4 at 2), and Plaintiff signed the form indicating that he disagreed with the informal level response on September 16, 2016. (ECF No. 40-4 at 6.) The prison was supposed to have responded to the grievance by June 10, 2017. The second level grievance response was actually dated August 10, 2017, and Plaintiff did not receive it until August 31, 2017.

There is a dispute of fact as to when Plaintiff learned of the formal STG notification and when his claim accrued: either on June 8, 2015, as Defendants assert, or around September 16, 2016, when he received the response to the informal level grievance advising him of the form and STG designation, as Plaintiff suggests. Even if Defendants are correct that Plaintiff's learned about the designation on June 8, 2015, the two-year statute of limitations would have been equitably tolled while Plaintiff was actively exhausting his claim, between May 18, 2016 and

August 31, 2017 (when he received the response to the second level grievance)).[4] Taking into account the equitable tolling period, Plaintiff timely filed this action.

In sum, Defendants' motion should be denied on the basis that Plaintiff did not file his complaint within the statute of limitations.

**C. Money Damages & Injunctive Relief**

A state official sued in his or her official capacity for monetary damages is not a person under section 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1981); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Prison officials sued in their official capacity for injunctive relief *are* considered persons under section 1983, because actions against them for prospective relief are not treated as an action against the state. *See Will*, 491 U.S. at 71 n. 19; *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013).

Plaintiff admits he is not seeking money damages against Defendants in their official capacity, and also concedes he is not seeking injunctive relief against Defendants in their official capacities. (ECF No. 53 R 8.) Therefore, summary judgment should be granted in Defendants' favor with respect to the official capacity claims asserted against them.

**D. Personal Participation - Ward and Wickham**

Defendants first argue that Plaintiff has not "alleged" facts showing the personal involvement of Ward or Wickham. The court already determined, when it screened the FAC, that Plaintiff did assert sufficient facts to assert a claim against Ward and Wickham.

---

[4] Defendants specifically acknowledge that equitable tolling applies to the limitations period starting on the date an inmate files his opening level grievance, and ending on the date he received the response to his final level grievance. (ECF No. 40 at 12:18-20.)

1   Defendants also argue that Plaintiff cannot establish Ward or Wickham violated his due

2   process rights as they simply responded to his grievance.

3   42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of

4   state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297

5   F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable

6   under section 1983 there must be a showing of personal participation in the alleged rights

7   deprivation[.]" *Id.* (citations omitted). When an official is sued under 42 U.S.C. § 1983, the

8   inmate "must show that each defendant personally played a role in violating the Constitution."

9   *Hines v. Youseff*, (9th Cir. Feb. 1, 2019) (citing *Menotti v. City of Seattle*, 409 F.3d 1113, 1149

10  (9th Cir. 2005); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). "An official is liable under

11  § 1983 only if 'culpable action , or inaction, is directly attributed to them.'" *Id.* (quoting *Starr v.*

12  *Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)).

13  First, Ward argues that his sole involvement was returning a second level grievance twice

14  for failing to comply with the requirements of AR 740, and when Plaintiff did comply, he moved

15  the grievance to defendant Wickham.

16  Plaintiff sent a kite dated April 14, 2016, to Ward, asking Ward to examine his placement

17  and validation and remove his STG designation as a white supremacist. (ECF No. 53 at 13.)

18  There is no response to the kite.

19  Wickham argues that his only involvement was to deny Plaintiff's grievance as a result of

20  Plaintiff failing to comply with AR 446 in appealing his STG designation, asserting that

21  responding to a grievance cannot give rise to liability.

22

23

Finally, they argue that unless plaintiff can produce documentation of correspondence with Ward or Wickham requesting an STG designation or proof that he spoke to them, he cannot survive summary judgment.

Plaintiff argues that Ward and Wickham were made aware of the issue about the STG designation and lack of a due process hearing, and they failed to take any action to remedy the situation.

There is evidence that Plaintiff notified Ward and Wickham of the issue with the STG validation, through a kite to Ward as well as the grievance Ward received, and through the grievance to Wickham. As such, they knew that Plaintiff claimed he had been designated as STG and had not been given a due process hearing, and failed to act to remedy the asserted lack of process. This is sufficient to give rise to liability under section 1983. This is not a scenario where a prison official is alerted to an alleged constitutional violation that the official has no power to remedy, i.e., an alleged excessive force incident that has already occurred. Ward as the associate warden certainly had authority to address the situation. While Wickham argues that STG issues are handled at the institutional level, and not by the associate director, he cannot just turn a blind eye and fail to act if an alleged constitutional violation is brought to his attention.

Therefore, there is at least a genuine dispute of fact that Ward and Wickham personally participated in violating Plaintiff's due process rights, and the motion should be denied insofar as Ward and Wickham move for summary judgment on this basis.

**E. Equal Protection - Wickham**

Plaintiff's equal protection claim is based on allegations that Wickham denied Plaintiff's grievance on the basis that Plaintiff did not appeal the STG designation within 10 days, but he allowed other inmates to pursue an appeal of an STG designation outside the 10-day appeal

timeframe, citing the case of inmate *Garner.* (ECF No. 13 at 10.) Plaintiff alleges that *Garner* was given a full STG committee review 31 months after the 10-day timeframe had expired. (*Id.*) Plaintiff attaches to his FAC an opinion from District Judge Jones filed on March 9, 2017, in *Garner v. Nash*, 3:16-cv-00410-RCJ-WGC.

Wickham argues that the case of inmate Garner (case 2017 WL 937719) is distinguishable from Plaintiff's situation. He asserts that Garner filed a grievance regarding his classification as a gang member in September 16, 2015, and on October 22, 2015, the STG hearing was held. He asserts that Plaintiff cannot prove that Wickham ever conducted an STG hearing or ordered such after the 10-day timeframe to appeal the designation.

In *Garner*, the inmate plaintiff sued Warden Nash, Caseworker Fierro, and Sergeant Mumpower for events that occurred while he was incarcerated at High Desert State Prison (HDSP). Garner alleged that on March 13, 2013, while in segregation, he spoke to his caseworker and saw he was listed as a "blood" gang member and designated as STG. Garner disputed that he was ever part of a gang. He averred that he sent kites to the STG office, to the Offender Management Division Office, and to Warden Nash, to no avail. Subsequently, Caseworker Fierro labeled him as a member of another gang, "NV-13," that was a rival of the "blood" gang. On September 16, 2015, Sergeant Satterly spoke to Garner regarding his STG status, and Garner reiterated he had never been part of a gang. Garner filed a grievance requesting a hearing, and on October 22, 2015, Garner had an STG hearing before Nash, Mumpower, Barrett, and Satterly, and in the end, Nash agreed to remove the NV-13 label, but not the suspected "blood" affiliate label. (*See* ECF No. 8 at 3:16-cv-00410-RCJ-WGC.)

There is no allegation or evidence that Wickham was involved in the alleged due process violation (which was not even allowed to proceed past screening) in the *Garner* case. Plaintiff

provides no evidence otherwise in his response. Nor does Plaintiff present any other evidence of Wickham allowing a STG due process hearing outside the 10-day time frame. Therefore, Plaintiff has failed to raise a genuine dispute of material fact with respect to his claim that Wickham allowed other inmates to appeal their STG designation beyond the 10-day appeal time period, which relies specifically on the *Garner* case. Therefore, summary judgment should be granted in Wickham's favor as to this claim.

**F. Miscellaneous**

Defendants only substantive argument as to the due process claim is that there is no evidence that Ward or Wickham personally participated in the alleged constitutional violation. They did not otherwise argue they were entitled to summary judgment on the due process claim, i.e. that Plaintiff received all process he was due, or that his designation was supposed by some evidence. They do make substantive arguments about the due process claim in their reply, but were required to raise the argument and demonstrate there was no genuine dispute as to those material facts in their motion and not in their reply brief.

Moreover, their qualified immunity argument was only premised on their assertions that Plaintiff cannot proceed against them in their official capacities, and that Ward and Wickham did not personally participate in the alleged constitutional violations—which were addressed above.

Therefore, they are not otherwise entitled to summary judgment on the due process claim.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order: **GRANTING** summary judgment in Defendants' favor with respect to the official capacity claims asserted against them; **GRANTING** summary judgment in favor of Wickham as to the equal protection claim; and, otherwise **DENYING** Defendants' motion.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: July 8, 2020

_____
William G. Cobb
United States Magistrate Judge